# Exhibit A

# PROMISSORY NOTE

$550,000.00 December 14, 2016

FOR VALUE RECEIVED, the undersigned, EVANGEL WORLD PRAYER CENTER OF KENTUCKY, INC., a Kentucky corporation ("Maker"), promises to pay to the order of STILLWATER BRIDGE CAPITAL, LLC, a Texas Limited Liability Corporation (together with all subsequent holders of this Note, "Payee"), on or before December 13, 2017 (the "Maturity Date"), as hereinafter provided, the principal sum of Five Hundred Fifty Thousand and No/100 Dollars ($550,000.00), the financing fee of Eleven Thousand and No/100 Dollars ($11,000.00), along with interest on the unpaid principal balance from time to time outstanding, commencing on the date hereof and continuing until the Maturity Date, at the fixed rate of interest per annum (the "Applicable Rate") equal to the lesser of (i) thirteen percent (13%) (the "Base Rate"), and (ii) the Maximum Lawful Rate (hereinafter defined), each change in the rate to be charged hereunder to become effective without notice to Maker on the effective day of each change in the Maximum Lawful Rate; provided, however, that if no Maximum Lawful Rate exists, then the Applicable Rate shall be equal to the rate specified in clause (i) preceding.

It is expressly understood by Maker and Payee that SHARE HOLDINGS, INC. ("Holdings") shall act as servicing agent for this Note. Maker shall make all payments of principal, financing fee, and interest and any additional fees as specified herein to SHARE HOLDINGS, INC. at the address specified below. Share's activities as servicing agent shall be outlined in a separate servicing agreement (the "Servicing Agreement") between Holdings and Payee.

The principal of, financing fee, and accrued interest on this promissory note (this "Note") shall be due and payable in lawful money of the United States of America at the office of Payee at 15770 Dallas Parkway, Suite 860, Dallas, TX 75248, or such other place as Payee may from time to time designate in writing to Maker. Interest based on a three hundred sixty (360) day year will be accrued on the number of days funds are actually outstanding and will be calculated on a daily basis. All payments of this Note shall, at the option of Payee, be applied first, to any late fees as described herein, next to the payment of accrued but unpaid interest, next to the reduction of the principal balance hereof, and then to the financing fee.

Interest on past due principal, financing fee, and, to the extent permitted by law, on past due interest, shall accrue from the dates due until paid at the rate of interest (the "Default Rate") per annum equal to the lesser of (x) the sum (calculated on the basis of actual days elapsed, but computed as if each calendar year consisted of three hundred sixty (360) days) of (i) five percent (5%), plus (ii) the Base Rate, and (y) the Maximum Lawful Rate; provided, however, that if no Maximum Lawful Rate exists, then such rate applicable to past due principal of, financing fee, and accrued interest on this Note shall be equal to the rate specified in clause (x) preceding. In addition, if any payments of accrued interest, financing fee, or principal and interest are not paid within ten (10) days of the due date, then Maker shall pay to Payee on demand a late charge in the amount of fifty dollars ($50.00).



Maker's Initials

1. **Payment of Principal, Financing Fee, and Interest.**

(a) All payments of principal, financing fee, and interest shall be due and payable in accordance with Exhibit A attached hereto. The amount of interest due as of any calendar month shall be accrued and calculated in accordance with the third paragraph of this Note based on the outstanding principal of this Note from time to time.

(b) All accrued and unpaid interest, all of the financing fee, and all of the unpaid principal balance of this Note shall be due and payable in full on the Maturity Date. All payments on this Note shall be applied, first, to any late fees as described herein, next to the payment of accrued but unpaid interest and, subject to Section 3 of this Note, any remainder shall be applied to the reduction of the principal balance hereof and the financing fee.

2. **Sources of Payment.**

All payments on this note shall originate from the proceeds of the Maker's sale of WBNA TV-21 (3701 Fern Valley Road, Louisville, KY 40219) into the FCC Broadcast Television Spectrum Incentive Auction. In the event that WBNA TV-21 is not sold into the Auction, or should the proceeds from the sale of WBNA TV-21 not be sufficient to deliver all principal, financing fee, and interest due and payable in accordance with Exhibit A, Maker shall immediately instruct Share Financial Services, Inc. to issue and sell Two Million Three Hundred Fifty-five Thousand and No/100 Dollars ($2,355,000.00) in fixed rate bonds. All proceeds from the Bond Issue shall be applied, first, to the payment of all principal, financing fee, and interest due on this Note. If, for any reason, neither of these sources of payment are available to Maker, all principal, financing fee, and interest due and payable shall remain due and payable in full on the Maturity Date.

3. **Prepayments.**

Maker shall be entitled to prepay the unpaid principal balance hereof, from time to time and at any time, in whole or in part, without premium or penalty.

4. **Events of Default and Remedies.**

(a) For the purposes of this Note, each of the following shall constitute an "Event of Default" hereunder:

(i) The failure or refusal of Maker to pay all or any part of each installment of accrued interest as and when the same becomes due and payable in accordance with the terms hereof, and the continuation of such failure or refusal for a period of ten (10) days following written notice thereof, or the failure or refusal to pay all of the unpaid principal balance, financing fee, and accrued but unpaid interest on this Note on the Maturity Date;

(ii) The failure or refusal of Maker to pay any amounts due and owing to Payee under this Note (other than the payment of principal and financing fee or installments of accrued interest under this Note) as the same become due in accordance with the terms hereof and the continuation of such failure or refusal for a period of ten (10) days following written notice thereof from Payee to Maker;

(iii) The failure or refusal of Maker punctually and properly to perform, observe and comply with any covenant, agreement or condition (other than covenants or agreements to pay the indebtedness described in clauses (i) and (ii) above, and other than the covenants set forth in Section 16 of this Note) contained in this Note, and the continuation of such failure or refusal for a period of thirty (30) days following written notice thereof from Payee to Maker, or if such default is of such a nature that it cannot reasonably be cured within such period of thirty (30) days, such period shall be extended for such longer time as is reasonably necessary (but in any event not to exceed a total of ninety (90) days) provided that Maker has commenced to cure such default within said period of thirty (30) days, and is actively, diligently and in good faith proceeding with continuity to remedy such default and provided that any delay in curing such default shall not result in a material adverse effect on the value of the Property;

(iv) The failure or refusal of Maker punctually and properly to perform, observe and comply with the covenants set forth in Section 16 of this Note;

(v) Any representation or warranty made by Maker to Payee in this Note or in any other certificate or document furnished by Maker to Payee in connection with the Loan or in furtherance of the requirements of this Note or of any Security Document (i) was incorrect or misleading in any material respect when made, or (ii) thereafter becomes false or misleading in any material respect and (if, but only if, the same is amenable of cure) the same is not cured within thirty (30) days after such representation or warranty has become false or misleading;

(vi) If a receiver, liquidator or trustee of Maker, or of any substantial portion of Maker's properties, shall be appointed; if a petition in bankruptcy or for reorganization or for protection under any Debtor Relief Laws shall have been filed against Maker and the same is not withdrawn, dismissed, cancelled or terminated within ninety (90) days; if Maker makes an assignment for the benefit of creditors or files or consent to the filing of a petition in bankruptcy or for protection under any Debtor Relief Laws or commence or consent to the commencement of any proceeding under the Federal Bankruptcy Code or any other federal or state law, now or hereafter in effect, relating to the reorganization of Maker or the arrangement or rearrangement or readjustment of the debts of Maker or having the effect of enjoining or staying the exercise of rights or remedies by creditors, its being understood that the filing against Maker of such a petition by a partner, officer or stockholder of Maker shall be deemed to be a filing with the consent of Maker; or if there is an attachment or sequestration of or relating to any substantial portion of any assets of Maker and the same is not promptly discharged;

(vii) If Maker shall cause, institute or fail to contest any proceeding for the dissolution or termination thereof;

(viii) If Maker ceases to do business or terminates its or his business as presently conducted for any reason whatsoever;

(ix) If Maker defaults under any other agreement that Maker has with Payee;

(x) If any default or event of default (as such terms, whether or not capitalized, may be defined or used in any Security Document) shall occur under such Security Document and such event remains uncured after expiration of any applicable grace or notice period; and

(xi) If any default or event of default (as such terms, whether or not capitalized, may be defined or used in any Senior Loan Document) shall occur under such Senior Loan Document and such event remains uncured after expiration of any applicable grace or notice period.

(b) Without notice or demand (each of which is hereby waived), the entire unpaid principal balance of, the entire financing fee, and all accrued interest on this Note shall immediately become due and payable at the option of Payee upon the occurrence of an Event of Default. In the event an Event of Default shall have happened, Payee may exercise any and all remedies set forth in any Security Document, and/or may proceed to protect and enforce its rights either by suit in equity and/or by action at law, or by other appropriate proceedings, whether for the specific performance of any covenant or agreement contained in this Note or in any Security Document, or in aid of the exercise of any power or right granted by this Note or by any Security Document or to enforce any other legal or equitable right of Payee.

5. **Cumulative Rights.**

No delay on the part of Payee in the exercise of any power or right under this Note, or under any Security Document, shall operate as a waiver thereof, nor shall a single or partial exercise of any such power or right preclude the further exercise thereof. Enforcement by Payee of any security for the payment hereof shall not constitute any election by it of remedies so as to preclude the exercise of any other remedy available to it.

6. **Waivers.**

Maker, and each other surety, endorser, guarantor and other party ever liable for the payment of any sum of money payable on this Note, jointly and severally waive demand, presentment, protest, notice of nonpayment, notice of intention to accelerate, notice of protest, notice of acceleration and

any and all lack of notice or diligence or any delay in collection or the filing of suit hereon which may occur, and agree that their liability on this Note shall not be affected by any renewal or extension in the time of payment hereof, by any indulgences, by any release of any party primarily or secondarily liable hereon, or by any release, substitution, subordination or change in any security for the payment of this Note, and hereby consent to any and all renewals, extensions, indulgences, releases, substitutions, subordinations, or changes, regardless of the number of such renewals, extensions, indulgences, releases, substitutions, subordinations, or changes, without notice thereof to any of them.

**7. Attorneys' Fees and Costs.**

In the event an Event of Default shall occur, and in the event that thereafter this Note is placed in the hands of an attorney for collection, or in the event this Note is collected in whole or in part through legal proceedings of any nature, then and in any such case, Maker promises to pay all out-of-pocket costs of collection, including, but not limited to, reasonable attorneys' fees incurred by or on behalf of Payee on account of such collection, whether or not suit is filed.

**8. Notices.**

All notices pursuant to any provisions of this Note or of the Security Documents must be in writing. Such notice shall be given by messenger, mail (registered or certified, return receipt requested) or facsimile effective when received by the party to whom addressed or when delivered to such address, and shall be addressed to the parties at the addresses given below. Rejection or other refusal to accept or the inability to deliver because of changed address of which no notice was given shall be deemed to be receipt of the notice, demand or request sent. By giving at least thirty (30) days written notice thereof, Maker or Payee shall have the right from time to time and at any time to change their respective addresses and each shall have the right to specify as its address any other address within the United States of America.

| | |
|---|---|
| If to Payee: | Stillwater Bridge Capital, LLC<br>15770 Dallas Parkway, Suite 860<br>Dallas, Texas 75248<br>Attention: Sean M. Hennessey<br>Facsimile No.: (972) 331-2297 |
| C.C.: | Share Holdings, Inc.<br>15770 Dallas Parkway, Suite 860<br>Dallas, Texas 75248<br>Attention: Charles H. Major<br>Facsimile No.: (972) 331-2297 |
| If to Maker: | Evangel World Prayer Center of Kentucky, Inc.<br>6900 Billtown Road |

Louisville, KY 40299
Attention: Darlene Miller
Facsimile No.: (502) 231-0809

C.C.: Share Holdings, Inc.
15770 Dallas Parkway, Suite 860
Dallas, Texas 75248
Attention: Charles H. Major
Facsimile No.: (972) 331-2297

9. **GOVERNING LAW.**

**THIS NOTE WAS NEGOTIATED IN THE STATE OF TEXAS, THE LOAN WAS MADE BY PAYEE AND ACCEPTED BY MAKER IN THE STATE OF TEXAS, AND THE PROCEEDS OF THE LOAN DELIVERED PURSUANT HERETO WERE DISBURSED FROM THE STATE OF TEXAS, WHICH STATE THE PARTIES AGREE HAS A SUBSTANTIAL RELATIONSHIP TO THE PARTIES AND TO THE UNDERLYING TRANSACTIONS EMBODIED HEREBY, AND IN ALL RESPECTS, INCLUDING, WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, ALL MATTERS OF CONSTRUCTION, VALIDITY, ENFORCEABILITY AND PERFORMANCE, THIS NOTE AND THE OBLIGATIONS ARISING HEREUNDER SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF TEXAS APPLICABLE TO CONTRACTS MADE AND PERFORMED IN SUCH STATE (WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAWS). TO THE FULLEST EXTENT PERMITTED BY LAW, MAKER HEREBY UNCONDITIONALLY AND IRREVOCABLY WAIVES ANY CLAIM TO ASSERT THAT THE LAW OF ANY JURISDICTION OTHER THAN THE STATE OF TEXAS GOVERNS THIS NOTE.**

10. **Headings.**

The headings of the sections of this Note are inserted for convenience only and shall not be deemed to constitute a part hereof, words used herein of any gender shall be construed to include any other gender where appropriate, and words used herein which are either singular or plural shall be construed to include the other where appropriate.

11. **Successors and Assigns.**

All of the covenants, stipulations, promises and agreements in this Note contained by or on behalf of Maker shall bind its successors and assigns, whether so expressed or not; provided, however, that Maker may not, without the prior written consent of Payee and Holdings, assign any rights, duties, or obligations under this Note. Without the consent of Maker, Payee may, in its sole discretion, at any time or from time to time while any portion of the indebtedness evidenced hereby



Maker's Initials

remains unpaid, transfer, sell, assign or pledge this Note (or any portion thereof) and any Security Document.

12. **Maximum Interest Rate.**

It is the intention of Maker and Payee to comply with applicable usury laws; accordingly, it is agreed that, notwithstanding any provision to the contrary in this Note or in any Security Document, no such provision shall require the payment or permit the collection of interest in excess of the maximum permitted by such laws. If any excess of interest in such respect is provided for, or shall be adjudged to be so provided for, then in such event (i) the provisions of this paragraph shall govern and control, (ii) neither Maker nor Maker's heirs, successors or assigns or any other party liable for the payment hereof shall be obligated to pay the amount of such interest to the extent that it is the excess of the maximum amount permitted by such laws, (iii) any such excess which may have been collected shall be, at the option of Payee, either applied as a credit against the then unpaid principal amount owing on this Note, or refunded, and (iv) the effective rate of interest covered by this Note shall be automatically subject to reduction to the maximum lawful rate allowed under applicable usury laws. Maker hereby agrees that as a condition precedent to any claim seeking usury penalties against Payee, Maker shall provide written notice to Payee, advising Payee in reasonable detail of the nature and amount of the violation, and Payee shall have sixty (60) days after receipt of such notice within which to correct such usury violation, if any, by either refunding such excess interest to Maker or crediting such excess interest against this Note then owing by Maker to Payee.

13. **Payments; Business Day.**

Each payment or prepayment hereon must be paid at the office of Share specified above in lawful money as therein specified and in funds which are or will be available for immediate use by Share at such office on or before 1:00 p.m., Dallas, Texas time, on the day such payment or prepayment is due. In any case where a payment of principal or interest hereof is due on a day which is not a Business Day, Maker, shall be entitled to delay such payment until the next succeeding Business Day, but interest shall continue to accrue until the payment is, in fact, made. As used herein "Business Day" means every day on which national banking associations located in Texas are allowed to be open for general lending business.

14. **Security.**

This Note is secured by a second lien on the Maker's property located at 1732 Thames Drive, Clarksville, IN 47129.

15. **Loan Payable at Maturity.**

**IT IS EXPRESSLY UNDERSTOOD AND AGREED THAT THIS NOTE WILL REQUIRE PERIODIC "BALLOON" PAYMENTS OF PRINCIPAL AND ACCRUED BUT UNPAID INTEREST ON THE DATES SPECIFIED IN EXHIBIT A. THE PRINCIPAL INDEBTEDNESS EVIDENCED BY THIS NOTE IS PAYABLE IN FULL AT MATURITY. MAKER MUST REPAY THE ENTIRE UNPAID PRINCIPAL BALANCE OF THIS NOTE AND ACCRUED BUT UNPAID INTEREST THEN DUE. PAYEE IS UNDER NO OBLIGATION TO REFINANCE THIS NOTE AT THAT TIME.**

**16. <u>Notices of Defaults and Events of Default.</u>**

Maker shall notify Share and Payee in writing immediately upon the occurrence of any Event of Default (or of any event that, with notice or passage of time or both, would constitute such an Event of Default), and such notice shall specify in reasonable detail the nature and circumstances of such Event of Default or other event and the steps that Maker has taken and/or intends to take to cure such Event of Default or other event.

**17. <u>Certain Representations and Warranties of Maker.</u>**

Maker hereby represents and warrants to Payee as follows, with each such representation and warranty to be deemed independently material and relied upon by Payee in making the Loan irrespective of any investigation by Payee:

(i) Maker has provided Payee with true, correct and complete copies of all Senior Loan Documents as currently in effect.

(ii) The financial statements of Maker that have been provided to Payee are true, correct and complete in all material respects as of the dates specified therein and fully and accurately, in all material respects, present the respective financial conditions of Maker as of such dates. Maker is solvent, and there has been no material adverse change in the financial condition of Maker between the date of the most recent financial statements submitted to Payee and the date hereof.

(iii) No default or event of default (as such terms, whether or not capitalized, may be defined or used in any Senior Loan Document) has occurred under any Senior Loan Document.

(iv) All representations and warranties of Maker set forth in the Senior Loan Documents, if any, are true and correct in all material respects as of the date of this Note.

(v) There are no actions, suits, or proceedings pending or threatened in any court or before or by any governmental authority against or affecting Maker, or involving the validity, enforceability, or propriety of any of the Senior Loan Documents or of the Loan Documents, at law or in equity. The consummation of the transactions contemplated hereby, and the performance of any of the terms and conditions hereof and of the other Loan

Documents, will not result in a breach of, or constitute a default in, any mortgage, deed of trust, deed to secure debt, lease, promissory note, loan agreement, credit agreement, partnership agreement, or other agreement to which Maker is a party or by which Maker is or may be bound or affected.

(vi) All of the Loan Documents, upon execution and delivery, will constitute valid and binding obligations of Maker, as applicable, enforceable in accordance with their terms except as limited by Debtor Relief Laws. The execution, delivery and performance of this Note by Maker have been duly authorized by all necessary action on the part of Maker. Maker has all necessary power and authority to own its properties, to conduct its business as presently (and as to be) conducted by Maker, and to execute, deliver and perform all of its obligations under this Note.

(vii) No approval, authorization, or consent of any governmental authority that has not yet been received is required for the proper execution, delivery, and performance of the Loan Documents.

(viii) All federal, state, foreign, and other tax returns of Maker required to be filed have been filed, and, to the best of Maker's knowledge, no deficiency, claim, controversy or dispute exists with respect to any federal, state, foreign, and other taxes imposed upon Maker.

(ix) To the best of Maker's knowledge, after diligent and thorough investigation, and after consulting with counsel, none of the proceeds of the Loan will be used for any purpose that is contrary to, or that would result in a violation of, any applicable statutes, laws, ordinances, regulations, orders, writs, injunctions, decisions, opinions or decrees of any governmental authority.

(x) There are no material facts or conditions relating to the Loan Documents, the Senior Loan Documents, and/or the financial condition and business of Maker that have not been accurately and fully disclosed, in writing, to Payee and Holdings. Additionally, all writings heretofore or hereafter exhibited or delivered to Payee and Holdings by or on behalf of Maker ("Writings") are and will be genuine and in all respects what they purport and appear to be, and the Writings do not and will not omit or fail to disclose facts of such character that, if omitted, would cause the Writings as submitted to be materially misleading.

**18. <u>Indemnity.</u>**

Maker shall indemnify, defend and hold harmless in full and promptly upon demand Payee and Share from and against any and all suits, claims, actions, causes of action, arbitrations, demands for arbitration, liabilities, obligations, debts, damages (including, without limitation, special, incidental, indirect or consequential damages, and damages for loss of business profits), losses, penalties, fines, disputes, contracts, agreements, understandings, settlements, commissions and fees (other than for claims for commissions or fees claimed by persons or parties employed or engaged by

Payee or Share), and arrangements whatsoever (in each case whether written or oral and whether expressed or implied), costs, and expenses (including, without limitation, attorneys' fees, court costs, and costs of investigation), of any and every kind whatsoever, whether actual or contingent, asserted or unasserted, known or unknown, foreseeable or unforeseeable, now existing or hereafter arising, whether based in contract, tort, strict liability, or otherwise, and whether statutory, at law or in equity relating to, pertaining to, or arising out of or in connection with (i) the Loan, (ii) the Loan Documents and the transactions contemplated thereby, (iii) any other aspect of the relationship between Maker and Payee (each of "Claim"), except to the extent that any such Claim results from the negligence of Payee or Share. The obligations and provisions of this paragraph shall continue and remain in full force and effect after the Loan and other obligations of Maker under this Note and under the other Loan Documents have been paid or discharged in full and shall survive the termination of this Note and the repayment of the Loan.

**19. Certain Definitions.**

For the purposes of this Agreement, the following terms have the following respective meanings:

(i) "Debtor Relief Laws" means any applicable liquidation, conservatorship, bankruptcy, moratorium, rearrangement, insolvency, reorganization, or similar laws affecting the rights or remedies of creditors generally, as in effect from time to time.

(ii) "Loan" means the $550,000.00 loan from Payee to Maker evidenced by this Note and secured by the Security Documents.

(iii) "Loan Documents" means this Note and the Security Documents, and all other agreements, documents and instruments evidencing, securing, or pertaining to the Loan as shall, from time to time, be executed and delivered by Maker to Payee and given in connection with the Loan.

(iv) "Security Document" means the lien.

**20. Time of the Essence.**

Time is of the essence in Maker's performance of this Note.

**21. Certain Rules of Construction.**

No inferences shall be drawn from any terms or provisions contained in unexecuted drafts of this Note. In addition, Maker acknowledges that its counsel has participated in the preparation of the Loan Documents and that, therefore, in the event of any ambiguity in, or controversy with respect to the meaning of, any term or provision contained in any Loan Document, no presumption shall exist

against any party's interpretation thereof solely by reason of such party's or its counsel's participation in the preparation of such Loan Document.

**NO COURSE OF DEALING BETWEEN MAKER AND PAYEE, NO COURSE OF PERFORMANCE, NO TRADE PRACTICES, AND NO EXTRINSIC EVIDENCE OF ANY NATURE MAY BE USED TO CONTRADICT OR MODIFY ANY TERM OF THIS NOTE OR OF ANY OTHER LOAN DOCUMENT. THIS NOTE AND THE OTHER LOAN DOCUMENTS COLLECTIVELY REPRESENT THE FINAL AGREEMENT AMONG THE PARTIES WITH RESPECT TO THE SUBJECT MATTER HEREOF AND THEREOF AND MAY NOT BE CONTRADICTED BY ANY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS BETWEEN THEM. THERE ARE NO ORAL AGREEMENTS BETWEEN THE PARTIES.**

*[The remainder of this page has intentionally been left blank]*



Maker's Initials

IN WITNESS WHEREOF, the undersigned has executed this Note as of the date and year first above written.

**MAKER:**

**EVANGEL WORLD PRAYER CENTER OF KENTUCKY, INC.**

By: Robert W Rodgers President

**EXHIBIT A**

At the Maturity Date, the Maker shall cause to be paid to Payee interest, financing fee, and principal due under the Note in the Amount of $632,500.00.



RWR
Maker's Initials