UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| RESOLUTION COLLECTION CAPTIAL, LLC, f/k/a STILLWATER BRIDGE CAPITAL, LLC, <br><br>*Plaintiff*, <br><br>v. <br><br>EVANGEL WORLD PRAYER CENTER OF KENTUCKY, INC., <br><br>*Defendant*. | Civil Action No. 3:18-CV-01990-X |

## MEMORANDUM OPINION AND ORDER

Before the Court is plaintiff Resolution Collection Capital, LLC.'s (Resolution) motion for summary judgment [Doc. No. 44]. Resolution and Evangel World Prayer Center of Kentucky, Inc. (Evangel) briefed the motion, and the Court held a telephonic hearing on May 28, 2020. Therefore, the motion is ripe. For the following reasons, the Court **GRANTS** Resolution's motion for summary judgment.

I.

On August 1, 2018, Resolution filed its original complaint against Evangel, seeking to enforce the contractual terms of a promissory note. On January 8, 2020, Resolution filed its third amended complaint [Doc. No. 41].[1] On the same day, Resolution filed a true and correct copy of the promissory note [Doc. No. 43].

---

[1] Following the special order transferring this dispute to Judge Starr [Doc. No. 38], the Court noted that Resolution failed to plead citizenship correctly in accordance with 28 U.S.C. § 1332 [Doc. No. 40]. In its third amended complaint, Resolution correctly pled citizenship to establish this

1

On December 14, 2016, in exchange for value received from Resolution, Evangel signed and issued to Resolution a promissory note for the principal sum of $550,000, with a financing fee of $11,000 and an interest rate of 13% per year (the Note). Undisputed by both parties, and as evidenced by the Note, Resolution and Evangel formed a contract. Resolution is the sole holder of the Note. The Note was due and payable to Resolution on or before December 13, 2017. Receiving no payment from Evangel by December 13, 2017, Resolution demanded full payment of the Note on December 14, 2017. In an affidavit, Resolution asserts that, to date, Evangel has made no payments under the terms of the Note. And Evangel admits to making no payments to date.

Resolution alleges the amount owed (including the Note's principle, financing fee, and interest) was $632,500 as of December 13, 2017. According to the Note's terms, Resolution further alleges the annual interest rate rose to 18% per year after default on December 13, 2017. And Resolution contends that as of February 10, 2020, it is owed the sum of $882,021.85, after allowing all just offsets and credits. Additionally, Resolution alleges that Evangel is required to pay all out-of-pocket costs of collection, including the associated attorneys' fees and costs involved in this litigation.[2]

---

Court's subject matter jurisdiction. The Court has diversity jurisdiction because Resolution is a limited liability company and its single member, Sean Hennessy, is a citizen of Texas. The sole defendant, Evangel, is a citizen of Kentucky. And so complete diversity exists between the parties and the amount in controversy is at least $550,000 (the monetary value of the promissory note), which sufficiently exceeds the Court's jurisdictional requirement of $75,000 pursuant to 28 U.S.C. § 1332(a).

[2] Resolution also alleged that the Note was secured by a second equitable lien on certain property held by Evangel in Kentucky, and it requested that the Court determine the nature of

Evangel argues that Resolution's motion for summary judgment should fail because certain of the Note's conditions precedent—specifically, the sale of a TV station or the issuance and sale of fixed-rate bonds—have not occurred, and that Resolution has not shown that these sources of payment are unavailable to Evangel. To advance this defense, Evangel cites the Note's provision entitled "Sources of Payment," which says:

> All payments on this note shall originate from the proceeds of the [Evangel's] sale of WBNA TV-21 . . . .  In the event that WBNA TV-21 is not sold . . . or should the proceeds from the sale of WBNA TV-21 not be sufficient to deliver all principal, financing fee, and interest . . . [Evangel] shall immediately instruct Share Financial Services, Inc. to issue and sell Two Million Three Hundred Fifty-five Thousand and No/100 Dollars ($2,355,000.00) in fixed rate bonds . . . .  If, for any reason, neither of these sources of payment are available to [Evangel], all principal, financing fee, and interest due and payable shall remain due and payable in full on the Maturity Date.[3]

In addition to its conditions-precedent defense, Evangel argues that Resolution lost its right to contract business in Texas following a tax forfeiture on January 26, 2018, thereby losing its ability to enforce its rights under the Note. Resolution does not dispute the tax forfeiture.  But Resolution argues that its forfeiture did not exceed the three-year window of reinstatement allowed by the Texas Business Organization Code.  And so, Resolution argues that the ten-month charter forfeiture does not preclude its ability to enforce its rights under the Note.

---

Resolution's security interest in that property.  But Resolution withdrew its claim involving the second equitable lien during the parties' hearing on this motion.

[3] Promissory Note, at 3 [Doc. No. 43].

II.

Summary judgment is appropriate only if, viewing the evidence in the light most favorable to the non-moving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[4] "A fact is material if it 'might affect the outcome of the suit'" and "[a] factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[5] Courts "resolve factual controversies in favor of the nonmoving party, but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[6]

This case presents no genuine dispute of material facts. "To recover on a promissory note, the [plaintiff] must show (1) the defendant signed it, (2) the [plaintiff] is the present owner or holder, and (3) the note is in default."[7] It is undisputed that Evangel executed the Note at issue in this controversy on or about December 14, 2016. Resolution has shown it's the sole holder and owner of the Note. And Evangel has admitted to defaulting under the Note by admitting that no part of the Note has been paid.

Because there is no dispute of material facts, Resolution's motion for summary judgment presents a legal question—what are the parties' obligations under the

---

[4] FED. R. CIV. P. 56(a).

[5] *Thomas v. Tregre*, 913 F.3d 458, 462 (5th Cir. 2019) (alteration in original) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[6] *Antoine v. First Student, Inc.,* 713 F.3d 824, 830 (5th Cir. 2013) (quotation marks omitted).

[7] *United States v. Lawrence,* 276 F.3d 193, 197 (5th Cir. 2001).

Note?[8]  As "this is a diversity case, we interpret the contract at issue under Texas law."[9]  Under Texas law, "the interpretation of an unambiguous contract is a question of law for the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was entered."[10]  "If a written contract is so worded that it can be given a definite or certain legal meaning, then it is not ambiguous."[11]

III.

The essence of this legal dispute is whether the Note was due and payable to Resolution on or before December 13, 2017.  To answer this question, the Court begins with the Note's plain text.  The Note specifies that Evangel

> promises to pay to the order of [Resolution] . . . on or before December 13, 2017 (the "Maturity Date"), as hereinafter provided, the principal sum of Five Hundred Fifty Thousand and No/100 Dollars ($550,000), the financing fee of Eleven Thousand and No/100 Dollars ($11,000), along with interest on the unpaid principal balance . . . commencing on the date hereof and continuing to the Maturity Date[.][12]

The Court finds that the Note unambiguously establishes its maturity date as December 13, 2017.

---

[8] *See Gonzalez v. Denning*, 394 F.3d 388, 392 (5th Cir. 2004) ("Contract interpretation is purely a legal issue[.]").

[9] *Id.*

[10] *Gonzalez*, 394 F.3d at 392 (quotation marks omitted).  The goal of contract interpretation in Texas is to "ascertain the true intent of the parties as expressed in the instrument" and "give effect to all provisions such that none are rendered meaningless."  *Id.*

[11] *Id.* (quotation marks omitted).  Practically speaking, the Texas Supreme Court finds few contracts or statutes to be ambiguous after close examination.  It takes more than the parties disagreeing on the meaning of a contract to make it ambiguous.  A contract is ambiguous only if there are multiple reasonable court interpretations of it.

[12] Promissory Note, at 2.

Although the Note sets December 13, 2017 as its maturity date, Evangel contends that the maturity date is not triggered until Resolution can show that certain conditions precedent—specifically, the sale of a TV station or issuance and sale of fixed-rate bonds—occurred, or that those conditions were unavailable to Evangel. To determine if this is the case, the Court begins again with the Note's plain text. The Note's provision entitled "Sources of Payment" says:

> All payments on this note shall originate from the proceeds of the [Evangel's] sale of WBNA TV-21 (3701 Fern Valley Road, Louisville, KY 40219) . . . . In the event that WBNA TV-21 is not sold . . . or should the proceeds from the sale of WBNA TV-21 not be sufficient to deliver all principal, financing fee, and interest . . . [Evangel] shall immediately instruct Share Financial Services, Inc. to issue and sell Two Million Three Hundred Fifty-five Thousand and No/100 Dollars ($2,355,000.00) in fixed rate bonds . . . . If, for any reason, neither of these sources of payment are available to [Evangel], all principal, financing fee, and interest due and payable shall remain due and payable in full on the Maturity Date.[13]

Evangel argues that under this provision Resolution bears the burden to show that the TV-station sale has occurred or that the fix-rate bonds were issued and sold, or to show that neither source of payment is available to Evangel. The Court finds that the Note's unambiguous terms do not impose either burden on Resolution.

The Note's "Sources of Payment" paragraph does not create conditions precedent for the effectiveness of the maturity date. Rather, the Note, through that provision, establishes a maturity date and then directs three possible methods for Evangel to satisfy the Note's terms by that date. First, the Note says that "[a]ll

---

[13] *Id.* at 3.

payments on this note shall original from the proceeds" of a TV station (WBNA TV-21).[14] But the Note does not prescribe this as the only way for Evangel to satisfy its terms—in fact, it does the opposite by offering a second avenue if the first does not occur or is insufficient.  Second, the Note contemplates that "[i]n the event that WBNA TV-21 is not sold into the Auction, or should the proceeds from the sale of WBNA TV-21 not be sufficient" then Evangel shall "immediately instruct" the issuance and sale of certain fixed-rate bonds to either pay in full or make up the difference of the principal, financing fee, and interest due under the Note.[15]  But, even if the issuance and sale of fixed-rate bonds fails to provide a full—or any—source of payment, the Note provides a final, catch-all path for Evangel to take.  Third, the Note says that "[i]f, *for any reason*, neither of these sources of payment are available" to Evangel, the Note "shall *remain* due and payable in full on the Maturity Date."[16]

In sum, the Court finds that the Note's terms are unambiguous.  Its plain text states that the Note shall remain due and payable in full on December 13, 2017.  Even if WBNA-21 is not sold.  Even if WBNA-21 is sold but its sale proceeds are insufficient, and the fixed-rate bonds aren't issued and sold.  Even if the fixed-rate bonds are issued and sold, but their proceeds are insufficient.  And even if, for any reason, neither source of payment is available to Evangel.  Indeed, the fact that the note shall "remain" due and payable is a key clue the Note was always due and payable on

---

[14] *Id.*

[15] *Id.*

[16] *Id.* (emphasis added).

December 13, 2017, and that, even without the TV station sold or fixed-rate bonds issued and sold, the Note remained due and payable on December 13, 2017.[17]

Evangel argues that Resolution's tax forfeiture precluded it from seeking to enforce the Note's terms. The Texas Business Organizations Code plainly says that, following a tax forfeiture, "If a filing entity is reinstated before the third anniversary of the date of its involuntary termination, the entity is considered to have continued in existence without interruption form the date of termination."[18] After its ten-month tax forfeiture, Resolution was properly reinstated as an entity under Texas law. Therefore, it may enforce its rights under the Note.

Finally, the Court considers Resolution's claim for attorneys' fees and out-of-pocket costs of collection. Evangel's response relies on its claims that the Note is not due and payable, and that Resolution lost its right to enforce the Note. But the Court has already determined the Note is due and payable, and that Resolution was properly reinstated as a Texas entity. Therefore, it may seek to enforce the terms of the Note, which states:

> In the event an Event of Default shall occur, and in the event that thereafter this Note is placed in the hands of an attorney for collection, or in the event this Note is collected in whole or in part through legal proceedings of any nature, then and in any such case, [Evangel] promises to pay all out-of-pocket costs of collection, including, but not

---

[17] The Note also expressly says (in all caps): "THE PRINCIPAL INDEBTEDNESS EVIDENCED BY THIS NOTE IS PAYABLE IN FULL AT MATURITY. [EVANGEL] MUST REPAY THE ENTIRE UNPAID PRINCIPAL BALANCE OF THIS NOTE AND ACCRUED BUT UNPAID INTEREST THEN DUE[.]" *Id.* at 8–9.

[18] TEX. BUS. ORGS. CODE § 11.253(d).

limited to, reasonable attorneys' fees incurred by or on behalf of [Resolution] on account of such collection[.][19]

And so, the Court grants Resolution's claim for out-of-pocket costs of collection, including reasonable attorneys' fees, as the Note provides.

IV.

The Court holds that a fair reading of the plain text of the Note and Texas law entitles Resolution to judgment as a matter of law on these undisputed facts. Resolution is entitled to summary judgment on its claim that Evangel is obligated to pay in full the principal sum, financing fee, accrued interest, and out-of-pocket costs of collection (including reasonable attorneys' fees) under the terms of the Note. Accordingly, the Court **GRANTS** Resolution's motion for summary judgment and will separately issue a final judgment.

So far, Resolution has provided only the estimated amounts for the total out-of-pocket costs of collection, including attorneys' fees. Therefore, the Court also **ORDERS** Resolution to file a motion for fees and costs with proper supporting evidence within 14 days of this Order. Evangel will have 21 days to respond to Resolution's motion. Resolution will have 14 days to reply to Evangel's response.

**IT IS SO ORDERED** this 29th of July 2020.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

---

[19] Promissory Note, at 6.